Filed 4/1/26  P. v. Boivin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082609 |
| v. | (Super.Ct.No. SWF2101325) |
| ROBERT JAMES BOIVIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Laura Garcia, Judge.

Affirmed with directions.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General,

Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Arlyn Escalante,

Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Robert Boivin (Defendant) was convicted of 18 criminal violations, 17 of which pertained to his regular sexual abuse of Jane Doe (Doe), the daughter of his girlfriend, April P. for approximately eight years. Defendant was charged with multiple criminal violations relating to oral copulation, digital penetration, lewd and lascivious acts, and rape (Pen. Code, §§ 288.7, subd. (b); 288, subd. (b)(1); 269, subds. (a)(4) and (5); 289 subd. (a)(1)(C); 287, subd. (c)(2)(C); 264 subd. (c)(2))[1] and one violation of furnishing cannabis to of Doe. (Health & Saf. Code, § 11361, subd. (b).) Following a trial by jury, Defendant was convicted and sentenced to an aggregated term comprising an indeterminate term of 45 years to life consecutive to a determinate term of 110 years in prison. He appeals.

On appeal, Defendant argues his convictions must be reversed because (1) the trial court failed to instruct the jury on nonforcible sexual penetration and oral copulation of a minor aged 14 or older on counts 11 to 16 as lesser included offenses; (2) there is insufficient evidence to support the conviction for furnishing cannabis; (3) there is insufficient evidence to support the convictions for counts 9 through 16 (alleging violations of §§ 269, subd. (a)(4)-(5), § 289, subd. (a)(1)(C), & § 287, subd. (c)(2)(C)); (4) the prosecutor committed misconduct during arguments to the jury; (5) the court abused its discretion in imposing the midterm sentence on counts 3 through 8, and 11 through 18, for which remand is required pursuant to Assembly Bill No. 124 (2020-2021

---

[1] All further statutory reference are to the Penal Code unless otherwise indicated.

Reg. Sess.), Stats. 2021, ch. 695, § 5); and (6) the abstract of judgment is incorrect. We affirm with directions to modify the abstract.

## BACKGROUND

Doe was 22 years old at the time of trial, born in 2000, and lived in Hemet, California, until moving to Santa Maria, California, when she was 17 years old. April, Doe's mother, met Defendant when Doe was five years old, and soon afterwards, Defendant moved in with Doe and April. At some point, they moved to another residence where Defendant's mother and other family members lived at various times. Doe did not remember large parts of her childhood.

Shortly after April and Defendant started dating, Defendant moved in with April and Doe at the apartments where they first lived. Doe remembered there was some inappropriate touching by Defendant while living at this location, but she did not remember specifics. Doe called Defendant "dad."

When Doe was about eight years old and in elementary school, her family moved from that first apartment into a townhome. Doe lived there with April, Defendant, and her little sister, R.B., April's daughter by Defendant. Doe was about 10 years old when she started middle school in the sixth grade, and she was 13 years old when she entered high school. She graduated high school when she was 17.

Doe's earliest memories of Defendant touching her inappropriately were when she was 10 years old and in either fifth or sixth grade. Doe remembered that when she was that age, Defendant came into her bedroom for the first time while she was sleeping, and started massaging her legs, making his way up to her vagina. Doe testified that

3

Defendant would finger her and lick her "down there," ever since she could remember. This would happen every day, sometimes twice a day. Doe recalled him licking her in the vagina until she pushed him away. She would tell him that she did not want him close to her, but then she would let it happen because if she did not, he would not allow her to do certain things like hang out with her friends. Defendant would also threaten to leave the house, and Doe would be scared that she, April, and her little sister would be left without any money.

Other times when Doe pushed Defendant away, he would push her hands away or hold her hands or her thighs down so she would not move. Sometimes she would ask him to stop, and he would, but then he would have a bad attitude towards everyone in the house until it happened again.

Doe would try to stop the abuse from happening by pushing Defendant's head away, but he would sometimes get angry and still do it despite her pushing him away. There were times when she said "no," and then the next day, when she asked Defendant whether she could hang out with friends, Defendant would ask what she would do for him in return. Even before high school, if she had tried to stop the abuse, Defendant would tell her she could not have dessert, or watch TV, or he would ground her for some reason.

Defendant would also grab Doe's hand and force it onto his penis, and Doe would pull it away; then she would always refuse and leave the room. This happened multiple times and most recently when she was 13 years old. Defendant would put his fingers in

4

Doe's vagina or anus almost every day and even more so when they were in the car on their way to pick up April from classes she was taking at the time.

Defendant's oral copulation and fingering of Doe continued all throughout high school until she moved out of Hemet. There were times in high school where Doe would seek sexual attention from Defendant, but afterwards, she would feel disgusted with herself.

The most recent incident with Defendant happened right before Doe moved out of Hemet. Defendant was hanging out in the front yard with a neighbor, "Bubba." They were drinking and smoking, and Doe joined them to play dominoes. Bubba offered Doe some marijuana, and Doe asked Defendant for permission to smoke it. Defendant and April allowed Doe to drink and smoke from the time she was 15 years old, as long as she had their permission. Doe remembered that after drinking and smoking with Bubba and Defendant, she went inside to sleep on the couch. When she woke up, Defendant was on top of her having sex with her. She could feel something happening below her waist, and she realized Defendant's penis was in her vagina. She was very hazy waking up, but she kicked Defendant off, and she stayed in her room for the rest of the day until April and other friends came over to the house. Doe moved to Santa Maria the same week of this incident.

The only person Doe told about the abuse was an online friend with whom she texted. April found out about the abuse when she read those text messages on an old phone that had belonged to Doe. April confronted Defendant, and he said that he had never forced Doe to do anything. Defendant admitted to sexually penetrating and orally

5

copulating Doe. He told April this had started when Doe was "around 11 when she became a young woman." Doe told police officers that the abuse had been going on for eight to 10 years. Doe remembered Defendant told her—when he had started touching her at the age of six—that she "could get used to it because it was a different kind of love that stepparents would show their children."

Defendant testified in his own defense at trial and admitted he had sexual contact with Doe. The last time there was sexual contact between them was after Doe turned 18. Defendant stated that he believed Doe wanted the sexual interactions to take place, and she never indicated that she did not want to engage in this conduct.

According to Defendant, Doe was 11 and a half at the time he started engaging in sexual activity with her. Defendant testified that he asked Doe for her permission when this started. He would ask her if she wanted to "mess around." Defendant admitted that he knew what he was doing to Doe was wrong. At one point, when Doe was 14, she asked Defendant to stop the sexual activity, and he agreed, but then, according to Defendant, she reinitiated the contact about a month later. Defendant denied ever asking Doe for sexual favors in exchange for allowing her to go out with friends.

Defendant's conduct began with touching Doe by tickling her and touching her vagina. The touching then progressed when he told her he wanted to try something different and inserted his fingers into her vagina. He knew it was wrong. This, in turn, progressed to putting his hand down her pants by again asking her if she wanted to try something new. Defendant did not know if this is something Doe wanted to do, but she allowed it, and for him, this made it okay. According to Defendant, months later, when

Doe was 12, he asked her if she wanted to try something new again, and he asked her to pull down her pants. Doe obeyed him, and he started orally copulating her. Defendant felt sexual gratification from this. Defendant admitted that he would put his fingers in her vagina and orally copulate her two to four times a week from the time she was 11 until she moved out of the house.

Defendant admitted that on the day he and Bubba were smoking and drinking, Doe also smoked, and she looked "stoned." He admitted he gave Doe permission to smoke the marijuana Bubba gave to her. Defendant admitted having sexual intercourse with Doe and stated that she had taken off her own clothes, and she had helped take off his clothes. According to Defendant, Doe did not tell him to stop or push him away.

Defendant was charged by an information with two violations involving oral copulation or penetration with a person under 10 years of age (§ 288.7, subd. (b), counts 1 & 2), six violations of lewd and lascivious acts on a person under 14 by force, violence, duress, menace, and fear of immediate and unlawful bodily injury[2] (§ 288, subd. (b)(1), counts 3-8), oral copulation by force or fear on a person under the age of 14 and seven or more years younger than Defendant (§ 269, subd. (a)(4), count 9), digital penetration by force on a child under 14 (§ 269, subd. (a)(5), count 10), three violations alleging digital penetration by force on a child aged 14 years or older (§ 289, subd. (a)(1)(C), counts 11,

---

[2] Counts 3 and 5 involved allegations of digital penetration of Doe; counts 4 and 6 involved acts of oral copulation, and counts 7 and 8 involved allegations that Defendant forced Doe to touch his penis. Henceforth, we refer to the elements of "force, violence, duress, menace, and fear of immediate and unlawful bodily injury" using the shorthand reference to "force or fear."

13, 15), three violations alleging oral copulation by force on a child 14 or older (§ 287, subd. (c)(2)(C), counts 12, 14, 16), one count of unlawful sexual intercourse with a minor above the age of 14 by force and without consent (§ 264, subd. (c)(2), count 17) and one count of unlawfully furnishing cannabis to a minor over the age of 14. (Health & Saf. Code, § 11361, subd. (b).)

The information further alleged several aggravating circumstances, within the meaning of California Rules of Court, rules 4.421(a)(1), (3), (7), and (11).

A jury convicted Defendant as charged on counts 2 through 18, and convicted him of the lesser included offense of attempted sexual penetration under sections 664 and 289, subdivision (a)(1), in count 1. The jury also returned findings that in the commission of the acts alleged in counts 11, 12, 13, 14, 15, and 16, the Defendant did use force, violence, duress, menace, or fear of immediate and unlawful bodily injury on a minor age 14 or older.

A court trial was conducted respecting the alleged aggravating factors, in which the trial court found true that Doe was a particularly vulnerable victim, that Defendant was in a position of trust or confidence, and that Defendant committed more than one crime for which consecutive sentences could be imposed.

The trial judge sentenced Defendant to a total determinate term of 110 years, plus an indeterminate term of 45 years to life. The court imposed a minimum restitution fine in the amount of $300 pursuant to section 1202.4, which was stayed, suspended a parole revocation restitution fine in the same amount pending successful completion of parole, imposed a fine of $300 pursuant to section 290.3, and a fine of $70 pursuant to section

264, subdivision (b). The court waived the $40 court operations assessment fee pursuant to section 1465.8, as well as the $30 conviction assessment fee pursuant to Government Code section 70373 for each count of conviction.

Defendant timely appealed.

## DISCUSSION

1. *Whether the Trial Court Erred in Failing to Instruct on a Lesser Offense*

Defendant acknowledges that the trial court instructed the jury on various lesser included offenses respecting counts 11 through 16, involving violations in which Defendant was alleged to have used force, violence or fear in the commission of the crimes. On appeal, Defendant argues the trial court was required to instruct sua sponte on nonforcible sexual penetration as a lesser included offense of forcible sexual penetration and nonforcible oral copulation as a lesser included offense of forcible oral copulation. We find no prejudicial error.

a. *General Legal Principles Governing Duty to Instruct Sua Sponte*

" 'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.' [Citations.] 'That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.' " (*People v. Rogers* (2006) 39 Cal.4th 826, 866.) Stated another way, " '[a] trial court must instruct the jury on a lesser included offense, whether or not the defendant so requests, whenever evidence that the defendant is guilty of only the lesser offense is substantial enough to merit

9

consideration by the jury.' " (*People v. Nieves* (2021) 11 Cal.5th 404, 463, citing *People v. Halvorsen* (2007) 42 Cal.4th 379, 414, fn. omitted.)

However, " ' "the existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense … ." [Citation.] Such instructions are required only where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense.' " (*People v. Whalen* (2013) 56 Cal.4th 1, 68.) "Substantial support requires introduction of " " "evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." " " " (*People v. Wilson* (2021) 11 Cal.5th 259, 295.)

We review the trial court's failure to instruct on a lesser included offense de novo. (See *People v. Licas* (2007) 41 Cal.4th 362, 367; *People v. Manriquez* (2005) 37 Cal.4th 547, 581.) We consider the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5.) A trial court's erroneous failure to instruct on a lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836–837.

Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of (*Breverman*, *supra*, 19 Cal.4th at pp. 165–179; see *People v. Seaton* (2001) 26 Cal.4th 598, 667), or "when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." (*People v. Lewis* (2001) 25 Cal.4th

610, 646, citing *People v. Sedeno* (1974) 10 Cal. 3d 703, 721.) There is an exception to this rule that applies when the error deprives the defendant of the federal due process right to present a complete defense. (*People v. Rogers* (2006) 39 Cal.4th 826, 868, fn. 16, citing *Beck v. Alabama* (1980) 447 U.S. 625, 627, and *California v. Trombetta* (1984) 467 U.S. 479, 485.)

For purposes of determining a trial court's sua sponte instructional duties, the Supreme Court has said that " ' "a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." ' " (*People v. Woods* (2015) 241 Cal.App.4th 461, 473 (*Woods*), quoting *People v. Smith* (2013) 57 Cal.4th 232, 240.)

### b. *Analysis*

The People concede that nonforcible sexual penetration (§ 289, subd. (h)) is a lesser included offense of forcible sexual penetration (§ 269, subd. (a)(5)), and nonforcible oral copulation (§ 287, subd. (b)) is a lesser included offense of forcible oral copulation (§ 267, subd. (c)(2) & (3).) However, they argue there was no substantial evidence from which a jury could conclude that Defendant committed only the lesser, and not the greater offenses. We agree.

As noted in *Woods*, the question is whether, in assessing and weighing the evidence independently, the jury could have reasonably concluded that the defendant committed nonforcible oral copulation of the victim, a minor, but not forcible oral

11

copulation. (*Woods*, *supra*, 241 Cal.App.4th at p. 475.) In this case, in contrast to the record in *Woods*, we cannot respond affirmatively to that question.

First, the court did instruct on multiple lesser included offenses, including lewd and lascivious acts on a child under 14 (§ 288a-no force alleged, respecting counts 3 through 8) (CALCRIM No. 1110), and assault with intent to commit forcible oral copulation (CALCRIM No. 890), as a lesser included offense within the crime of forcible oral copulation respecting counts 12, 14, and 16. The court also instructed the jury on the elements of sexual battery (§ 243.4, subd. (e)(1)) (CALCRIM No. 938, a misdemeanor), simple battery, and simple assault, as lesser included offenses within the crime of sexual penetration by force or fear, for counts 11, 13, and 15. Regarding defenses, the court instructed the jury on consent as a defense to counts 9 through 17.

The trial court did not give, and neither Defendant nor the People requested, CALCRIM No. 1102, respecting nonforcible penetration of a person under the age of 18 as a lesser included offense as to counts 11, 13, and 15, nor did it give CALCRIM No. 1082, respecting nonforcible oral copulation of a person under the age 18, as a lesser included offense as to counts 12, 14 and 16. From this, we can assume error in the failure to give instructions, sua sponte, on lesser included offenses. But that does not end our inquiry.

The jury was given instructions on the elements of both forcible oral copulation and forcible sexual penetration, with force, fear, duress, retribution and menace defined within the instructions defining the offenses. (CALCRIM Nos. 1045, 1015.) These instructions each included the proviso that if the victim was found to have consented to

12

the acts, the jury must find the defendant not guilty. In addition, the jury was separately instructed pursuant to CALCRIM No. 3185, regarding the necessary findings of force or fear as sentencing factors, separate and apart from the findings made for the individual counts of conviction.

The jury was also instructed on lesser included offenses within those alleged in counts 11 through 16, although the court did not instruct using the CALCRIM instructions on the nonforcible lesser offenses, found in CALCRIM Nos. 1082 and 1102. Nevertheless, the jury was told that in order to convict, they must find that the People had met the burden of proving the elements of the crime by proof beyond a reasonable doubt. (CALCRIM No. 220.)

We acknowledge that the court's duty to instruct on the lesser offenses is not obviated by the Defendant's failure to request them. However, the court did instruct on other lesser included offenses, including assault with intent to commit forcible oral copulation (CALCRIM No. 890), as well as sexual battery and simple battery as lesser included offenses within the crime of sexual penetration by force of fear. Sexual battery is a lesser included offense of forcible sexual penetration under the accusatory pleading test, although it is not a lesser offense under the statutory elements test. (*People v. Ortega* (2015) 240 Cal.App.4th 956, 967.)

Here, the jury resolved the factual question regarding the force or fear elements in favor of Doe's description of the offenses, and it rejected Defendant's testimony. (See section 3, *post*, relating to the sufficiency of the evidence to support the convictions in counts 9 through 17, where we address Defendant's separate claim of insufficient

evidence of force or fear to support the convictions, the level of force, duress, retribution, menace and fear to support the convictions for forcible penetration and forcible oral copulation.)

We further note that the jury made separate true findings on the allegations of use of force or fear respecting counts 11 through 16. These findings further demonstrate that the jury resolved the factual issues against the Defendant, rejecting any notion that Doe consented to continuous molestation or that the acts were not accompanied by force. Thus, any error in failing to instruct the jury on lesser included offenses is harmless because the jury necessarily decided the factual questions posed by the omitted instructions adversely to Defendant under other properly given instructions. (*Lewis*, *supra*, 25 Cal.4th at p. 646.)

Reversal is not required.

2. *Whether There is Sufficient Evidence to Support the Conviction for Furnishing Cannabis*

Defendant argues there is insufficient evidence to support his conviction on count 18, furnishing cannabis to a minor over the age of 14, in violation of Health and Safety Code section 11361, subdivision (b). Defendant focuses on the fact that there was no evidence he shared in the ownership or had the right to control the cannabis, insofar as Bubba had handed the cannabis to Doe.

In evaluating the sufficiency of the evidence to support a conviction, " '"we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of

14

solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626, citing *People v. Lindberg* (2008) 45 Cal.4th 1, 27.) After viewing the evidence in the light most favorable to the prosecution, we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) In so doing, we presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

Health and Safety Code section 11361, subdivision (b), provides: "A person 18 years of age or over who furnishes, administers, or gives, or offers to furnish, administer, or give, any cannabis or cannabis products to a minor 14 years of age or older in violation of law shall be punished by imprisonment in the state prison for a period of three, four, or five years." "Furnish" means to provide, give, afford, or supply. "Give" means to deliver or transfer or to hand or hand over. A violation of Health and Safety Code section 11361 is committed by the supplying to or handing over of marijuana to a minor. (*People v. Shaffer* (1960) 182 Cal.App.2d 39, 43.)

Business and Professions Code section 4026 provides: " 'Furnish' means to supply by any means, by sale or otherwise." (See Health & Saf. Code, § 11016 [" 'Furnish' has the same meaning as provided in Section 4048.5 [now § 4026] of the Business and Professions Code"].) The patterned jury instruction for the offense, as used in this case, includes a bracketed section which was read to the jury, and which provides that "A person does not have to actually hold or touch something to furnish it/give it

15

away. It is enough if the person has control over it, or the right to control it, either personally or through another person." (CALCRIM No. 2390.)[3] This bracketed language referring to " 'right to control' " relates to constructive possession. (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn.8, citing *People v. Barnes* (1997) 57 Cal.App.4th 552, 556–557 and *Armstrong v. Superior Court* (1990) 217 Cal.App.3d 535, 538–539.)

"Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People v. Williams* (1971) 5 Cal.3d 211, 215.) Here, viewing the evidence in the light most favorable to the prevailing party, Doe asked Defendant for permission to smoke marijuana, and Defendant said "yes," allowing Bubba to hand the marijuana to Doe. In light of the evidence that Bubba did not hand the marijuana to Doe until after Defendant gave permission for Doe to have it, Defendant exercised control over it.

Even in Defendant's testimony, he agrees he gave permission for Bubba to give the marijuana to Doe, after Doe asked for it. In the absence of other evidence, the reasonable inference is that Bubba would not have handed the marijuana to Doe without Defendant's permission. The jury, based on this evidence, found the Defendant furnished

---

[3] The language quoted is from a bracketed part of the patterned instruction used by the court in his case. However, the actual language of CALCRIM No. 2390, is slightly different: "[A person does not have to actually hold or touch something to (sell it/furnish it/administer it/give it away). It is enough if the person has (control over it/ [or] the right to control it), either personally or through another person]." (CALCRIM No. 2390.) The differences are insignificant to the analysis.

16

the marijuana to Doe. From this we discern that it concluded that the need for Defendant's permission was a manifestation of control over the marijuana, sufficient to satisfy the elements of the crime.

There is substantial evidence to support the conviction.

3. *Whether There is Sufficient Evidence That Defendant Used Force, Violence, Duress, Menace, or Fear of Immediate Unlawful Bodily Injury in the Commission of the Offenses in Counts 9 through 16*

Defendant argues that there is insufficient evidence to support the convictions in counts 9 through 16, alleging violations of section 269, subdivision (a)(4), (5), section 289, subdivision (A)(1)(C), and section 287 subdivision (c)(2)(C), because there was insufficient evidence the Defendant used force, violence, duress, menace, or fear of immediate unlawful bodily injury. We disagree.

    a.    *Standard of Review and General Legal Principles*

We review the convictions, and particularly the elements of force or fear, for substantial evidence. The review of the sufficiency of evidence to support the convictions involves a review of the entire record, and we must review it in the light most favorable to the verdicts. "We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] This determination 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] Even '[e]vidence erroneously admitted is properly considered in weighing the sufficiency of evidence to support a

17

conviction, notwithstanding its erroneous admission.' " (*People v. Cardenas* (2025) 18 Cal.5th 797, 821.)

The offenses charged in counts 9 and 10 allege acts similar to those alleged in the remaining counts for purposes of evaluating the element of force or fear, the only difference is that section 269, subdivision (a)(4) and (5) involve minors under the age of 14. Section 287, subdivision (c)(2)(C) (forcible oral copulation), and section 289, subdivision (a)(1)(C) (forcible digital penetration) both refer to sexual acts committed "upon a minor who is 14 years of age or older, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

"Force" includes the force used to accomplish " 'the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act.' " (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071 (*Thomas*), citing *People v. Young* (1987) 190 Cal.App.3d 248, 258 (*Young*).) The same definition applies to the rape charge in count 17. (*Thomas*, *supra*, at p. 1071.)

" '[A]n act is forcible if force facilitated the act rather than being merely incidental to the act.' " (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1024.) " '[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves' are sufficient to support a finding that the lewd act was committed by means of force." (*Ibid.*, citing *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.)

Testimony by a victim she tried pushing the defendant away, and although that would make him stop, " 'he would try again and try again' " right away, has been held to

18

be sufficient force to support a conviction for forcible lewd acts. (*People v. Jimenez* (2019) 35 Cal.App.5th 373, 393.) The Defendant's act of positioning Doe, holding her still to keep her from moving, and resisting her attempts to push him away were sufficient to establish force.

The court in *Thomas* specified two types of circumstances that fall under the general definition of force: those "where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude," and those where the victim's body is moved to accomplish the act. (*Thomas*, *supra*, 15 Cal.App.5th at p. 1071, citing *Young*, *supra*, 190 Cal.App.3d at p. 258.) "In either circumstance, the jury would have to find the force used was sufficient to overcome the victim's will." (*People v. Melgoza* (2025) 115 Cal.App.5th 632, 645, citing *Thomas*, at p. 1072.) In *Thomas*, the reviewing court concluded that a reasonable jury could find that the sexual penetration was committed against Doe's will and with sufficient force to overcome her will by leading her by the hand into the bathroom, positioning her body on the sink before digitally penetrating her, when Doe was four or five years old and testified that she was scared. (*Thomas*, at p. 1072.)

In *Young*, involving a charge of forcible rape, the defendant put his arms around his six-year-old daughter, placed her on top of him, pulled her pants down, and put his finger in her vagina. The defendant made her slide down to his groin and put his penis in the victim's vagina. (*Young*, *supra*, 190 Cal.App.3d at pp. 252, 258.) The physical movement and positioning of the victim was held to be substantial evidence of force. (*Id*. at p. 258; see *People v. Griffin* (2004) 33 Cal.4th 1015, 1024.)

The term "duress" is defined by statute: " ' "Duress" means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and the victim's relationship to the defendant, are factors to consider in appraising the existence of duress.' " (*People v. Torres* (2024) 107 Cal.App.5th 513, 531 (*Torres*); see *People v. Soto* (2011) 51 Cal.4th 229, 246; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 50.)

The totality circumstances, including the age of the victim, and the victim's relationship to the defendant, are factors to consider in appraising the existence of duress. (*Torres*, *supra*, 107 Cal.App.5th at p. 531.) " 'The fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress.' " (*Id*., at p. 532, citing *Thomas*, *supra*, 15 Cal.App.5th at p. 1072.)

"Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

b.      *Analysis*

The information alleged in count 9 that Defendant committed an aggravated sexual assault/oral copulation by force with child under 14 years of age and seven or

more years younger than Defendant (§ 269, subd. (a)(4))[4]; in count 10, it alleged an aggravated sexual assault/forcible sexual penetration of a child under 14 years of age (§ 269, subd. (a)(5))[5]; counts 11, 13, and 15 alleged forcible sexual penetration on a child 14 or older (§ 289, subd. (a)(1)(C))[6]; while counts 12, 14, and 16 oral copulation by force of a minor 14 years of age or older (§ 287, subd. (c)(2)(C)).[7]

Defendant testified that Doe never indicated she did not want Defendant to commit the sexual acts on her, and that she never tried to push him away. According to Defendant, she only pushed him away after she had an orgasm, when she would close her legs and push them down. He denied using any type of force. In his reply brief,

---

[4] Section 269, subdivision (a)(4) provides: "Any person who commits any of the following acts upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child: [¶] … [¶] (4) Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 287 or former Section 288a."

[5] Section 269, subdivision (a)(5), provides: "Any person who commits any of the following acts upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child: [¶] … [¶] (5) Sexual penetration, in violation of subdivision (a) of Section 289."

[6] Section 289, subdivision (a)(1)(C), provides: "Any person who commits an act of sexual penetration upon a minor who is 14 years of age or older, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 6, 8, or 10 years."

[7] Section 287, subdivision (c)(2)(C), provides: "Any person who commits an act of oral copulation upon a minor who is 14 years of age or older, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 6, 8, or 10 years."

21

Defendant focuses on the counts committed when Doe was in high school, during which years, according to Defendant's testimony, "he did not force her, … she wanted to engage. [Doe] did not push [Defendant] away or tell him to stop."

The Defendant's version of the evidence does not establish that the convictions are not supported by substantial evidence. The jury was free to reject Defendant's self-serving statements. (*People v. Disa* (2016) 1 Cal.App.5th 654, 668, citing *People v. Silva* (2001) 25 Cal.4th 345, 369.) More importantly, we are required to review the entire record in the light most favorable to the prevailing party. Defendant's self-serving testimony and reliance on Doe's submission as evidence of her positive cooperation in "act or attitude" does compel reversal in light of the other evidence submitted to the jury, which it found to be more credible and reasonable.

Doe testified Defendant would use his hands to "hold [her] thighs in place or hold [her] hips in place so [she] would not move," that she was fearful Defendant would leave the family if Doe did not comply, and that she tried to push his head or shoulders to stop the touching but that he pushed her hands out of the way and would not stop unless she asked him to do so a second time. She also testified that she had tried to say no or resist but when she did, sometimes he would get mad and he would still try to keep going even though she tried to push his head away. For this reason, she ended up "just kind of letting it happen because if [she] didn't, [she] wouldn't be allowed to go and do certain things like hang out with [her] friends and stuff."

Doe further testified that she felt she had no choice, and was thinking of the care of April and her sister if she had reported the molestations. While Doe acknowledged

Defendant did not really say anything to make her fearful, he would get upset and mad at her, and she did not know if she would get into trouble if she resisted his actions. Therefore, Doe's supposed acquiescence in Defendant's criminal acts of molestation does not undermine the jury's verdict that the acts of forcible oral copulation or forcible sexual penetration when she was over the age of 14.

The instructions informed the jury how to evaluate the allegations of force or fear. The jury heard all the testimony and rendered verdicts that the acts alleged in counts 11 through 16 were committed by means of force or fear. The Defendant's self-serving assertion that she was a willing participant does not render the verdict invalid. There is substantial evidence to support the findings that the acts of oral copulation on a person 14 years of age or older, or acts of digital penetration on a person 14 or older were committed by means of force or fear.

4. *Whether the Prosecutor Committed Misconduct Warranting Reversal*

Defendant contends that reversal is warranted based on the prosecutor's comments in closing argument. Specifically, he argues that the prosecutor misstated the law relating to the issue of consent. We disagree.

a. *Background*

Defendant focuses his argument on the following passage from the prosecutor's summation to the jury, respecting counts 9 through 17: "And keep in mind as well that not only does she have to have freely and voluntarily consented to something that she knew all about, but the [D]efendant is not guilty of Charges 9 through 17 based on consent only if he actually and reasonably believed that [Doe] consented. So, I mean,

23

when you look at his testimony, if you gave him the benefit that in his mind, that there was this consensual relationship happening, right, that's still not enough, because was it reasonable?  Would a reasonable person have thought that [Doe] as a child was consenting to doing these things? Absolutely not."

The People argue that the claim was forfeited because Defendant failed to object in the trial court.  We agree.  (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 ["a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion–and on the same ground–the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety"]; *People v. Mincey* (1992) 2 Cal.4th 408, 471 [where defense counsel objected to prosecutor's closing argument, trial court sustained objection and counsel requested no further relief, defendant could not raise issue on appeal].)

Nevertheless, we have discretion to reach forfeited arguments for various reasons, including to forestall a claim of ineffective assistance of counsel.  (See, e.g., *People v. Crittenden* (1994) 9 Cal.4th 83, 146.)

b. *Legal Principles Governing Prosecutorial Misconduct Based on Misstatement of the Law*

" 'A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury.' [Citation.]  '[I]t is improper for a prosecutor to appeal to the passion or prejudice of the jury … .' [Citation.]  '[I]t is misconduct for a prosecutor, during argument, to misstate

the law [citation], or to invite or encourage the jury to do what the law prohibits.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 337, citing *People v. Whalen* (2013) 56 Cal.4th 1, 77.)

The general principles governing this genre of prosecutorial misconduct are summarized as follows: " '[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements [citation].' [Citation.] Improper comments violate the federal Constitution when they constitute a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. [Citation.] Improper comments falling short of this test nevertheless constitute misconduct under state law if they involve use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. [Citation.] To establish misconduct, defendant need not show that the prosecutor acted in bad faith. [Citation.] However, she [or he] does need to 'show that, "[i]n the context of the whole argument and the instructions" [citation], there was a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' [Citation.] If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.)

"Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.

Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44, citing *People v. Ayala* (2000) 23 Cal. 4th 225, 283–284.)

c. *Analysis*

Defendant's contention that the prosecutor misstated the law in arguing that the Defendant's belief that Doe consented to his acts was unreasonable, implies that the People misinformed the jury of the law of consent, according to the landmark case of *People v. Mayberry* (1975) 15 Cal.3d 143. He cites a paragraph from *People v. Andrews* (2015) 234 Cal.App.4th 590, 603, in which the reviewing court observed there was a subjective and objective component to the *Mayberry* defense. He then argues that "the prosecutor's comment was not correct as it implied that where the circumstances involve a minor, a defendant's good faith belief as to the minor's consent could never be objectively reasonable. This is not so. If it were, there would be no Mayberry instruction in cases where the victim is under 18 years old."

The *Mayberry* rule is grounded on the Supreme Court's holding in that case, where it stated: "If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to accompany him and to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite under [section 20] to a conviction of either kidnaping (§ 207) or rape by means of force or threat (§ 261, subds. 2 & 3)." (*Mayberry*, *supra*, 15 Cal.3d at p. 155.) Thus, a defendant's reasonable

26

and good faith mistake of fact that the victim consented to sexual intercourse is a defense to rape. (*Id*. at p. 155; see *People v. Molano* (2019) 7 Cal.5th 620, 667.)

Contrary to Defendant's claim, the prosecutor's argument did not negate the availability of the defense of consent for forcible sexual crimes committed against minors. Instead, the prosecutor urged the jury to find that the Defendant's belief that Doe consented to his acts of molestation was not reasonable, given the *Mayberry* requirement that the Defendant's belief that the victim consented be reasonable. Defendant's argument focuses on Doe's submission, however, rather than her consent to his acts. It was a fair comment on the state of the evidence.

Counsel's failure to object to the prosecutor's closing argument cannot succeed on direct appeal "unless the appellate record discloses ' "no conceivable tactical purpose" ' for defense counsel's omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674–675.) Because an objection would have been frivolous, and because Defendant's counsel was not required to make a frivolous objection, he did not provide ineffective assistance by failing to object to the prosecutor's argument.

Therefore, even if the issue had been properly preserved, reversal would be unwarranted.

5. *Whether the Trial Court Abused Its Discretion in Imposing the Midterm Rather Than the Low Term on Counts 3 Through 8 and 11 Through 18*

Defendant argues that the trial court failed to properly exercise its discretion in imposing the middle term on counts 3 through 8 and 11 through 18, rather than the

27

presumptive low term, in light of Assembly Bill No. 124 (eff. Jan. 1, 2022, Stats. 2021, ch. 695, § 5.3, adding § 1170, subd. (b)(6).) We disagree.

    a.    *Additional Background*

Defendant submitted a sentencing memorandum on September 28, 2023, nearly two years after the enactment of the amendment to section 1170, subdivision (b)(6). In his sentencing memorandum, Defendant requested that the trial court impose the mitigated term for counts 1, 3 through 8, and 11 through 16. He cited rule 4.423(a)(2) of the California Rules of Court, that the victim was an initiator of, willing participant in, or aggressor or provoker of the incident; rule 4.423(a)(7), that the defendant believed that he or she had a claim or right to the property taken, or for other reasons mistakenly believed that the conduct was legal; rule 4.423(b)(1), that he has an insignificant record of criminal conduct; rule 4.423(b)(8), that defendant voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process; and rule 4.423(b)(15), that his prior performance on probation or parole was satisfactory.

The People's sentencing memorandum sought imposition of the aggravated term. At the hearing, the trial court conducted a court trial on the aggravating factors, where both parties submitted on the evidence that had been submitted during the trial.[8]

After the trial court found the aggravating factors to be true (with the exception of the factor pertaining to excessive cruelty, viciousness or callousness, and the factor

---

[8] The Defendant's submission was subject to the evidentiary objections presented during the guilt phase of the trial.

pertaining to alleged physical injury, which the court found were not true), the sentencing court indicated it had read the sentencing memoranda filed by the parties. Defendant then requested that the court refrain from imposing fines, fees, and restitution, due to his inability to pay anything other than the mandatory $300 restitution fine,[9] and the prosecutor read aloud Doe's victim-impact letter. The court then proceeded with the pronouncement of judgment.

There was no oral discussion of the applicability of the presumptive low term pursuant to the amendment to section 1170, subdivision (b)(6) at the hearing, and no mention of the fact Defendant had been subjected to sexual abuse by a baby sitter at the age of eight, which was disclosed to the probation officer, but was not listed as a mitigating factor in the probation report, and was not mentioned in Defendant's sentencing memorandum or orally at the hearing.

Nevertheless, on appeal, Defendant argues error in the court's failure to exercise its discretion in light of Assembly Bill No. 124, and asserts there were mitigating factors present that would warrant imposition of the low term: Defendant had no felony convictions; his criminal history consisted of misdemeanors and infractions; some of the offenses were consensual; he believed the conduct was legal, and he voluntarily acknowledged wrongdoing at an early stage in the criminal process.

---

[9] Although neither the Defendant nor the court specified that the mandatory minimum of $300 referred to the restitution fine, section 1202.4, subdivision (b), requires imposition of a mandatory $300 restitution fine, unless "it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." The other statutory fines and fees are not similarly mandatory.

The People argue that any error was forfeited by the failure to argue in the trial court that the mitigating factors cited in this appeal warranted imposition of the low term. This point is well taken. As a general rule, "all 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for the first time on appeal are not subject to review." (*People v. Smith* (2001) 24 Cal.4th 849, 852; see *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100–1101 [the defendant waived claim that the court failed to consider several mitigating factors by failing to object at the sentencing hearing].)

Thus, arguments that sentencing choices were based on factors that are "inapplicable, duplicative, and improperly weighed" are forfeited by failing to object at the sentencing hearing. (*People v. Scott* (1994) 9 Cal.4th 331, 355.) Because Defendant failed to raise the mitigating factor relating to his alleged childhood sexual abuse in the trial court level, he forfeited any argument pertaining to that factor.

However, while we agree with the People in principle on this point, Defendant has argued that it is unclear if the court considered the amendment to section 1170 in exercising its discretion. Thus, we will address the merits.

b. *General Legal Principles*

Determination of the appropriate term is generally within the trial court's broad discretion (*People v. Ramos* (1980) 106 Cal.App.3d 591, 605) and must be affirmed unless there is a clear showing the sentence choice was arbitrary or irrational. (*People v. Hubbell* (1980) 108 Cal.App.3d 253, 260.)

30

The sentencing court may balance aggravating and mitigating factors against each other in qualitative as well as quantitative terms. (*People v. Roe* (1983) 148 Cal.App.3d 112, 119.) " 'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in "qualitative as well as quantitative terms" [citation] … . We must affirm unless there is a clear showing the sentence choice was arbitrary or irrational.' " (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582, citing *People v. Gimenez* (1975) 14 Cal.3d 68, 72; *People v. Oberreuter* (1988) 204 Cal.App.3d 884, 887 (*Oberreuter*).)

Additionally, "[a]bsent an explicit statement by the trial court to the contrary, it is presumed the court properly exercised its legal duty to consider all possible mitigating and aggravating factors in determining the appropriate sentence." (*Oberreuter*, *supra*, 204 Cal.App.3d at p. 888.) Notwithstanding the various amendments to the sentencing statutes and rules of court vis-à-vis whether there is a presumptive term, these fundamental principles are still applicable to guide the sentencing courts.

We review a trial court's sentencing decisions for abuse of discretion. (*People v. Knowles* (2024) 105 Cal.App.5th 757, 764.) In *Knowles*, the reviewing court went on to explain, "We presume that the trial court acted to achieve legitimate sentencing objectives." (*Ibid.*, citing *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978.) The burden is on the party attacking the sentence to clearly show that the court was unaware of the scope of its discretionary powers, or the sentencing decision was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 376; *People v. Gaines* (2023) 93 Cal.App.5th 91, 142; *People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

We may not presume error from a silent record.  (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)  "Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules."  (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322 (*Martinez*); see Cal. Rules of Court, rule 4.409 [all relevant sentencing factors "will be deemed to have been considered unless the record affirmatively demonstrates otherwise"]; *Knowles*, *supra*, 105 Cal.App.5th at p. 765.)

    c.    *Sentencing Under the Amendment to Section 1170*

Section 1170, subdivision (b), provides in part:  "(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).  [¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

"The plain language and statutory context of [section 1170], subdivision (b) are clear the Legislature did not intend to impose evidentiary or proof requirements or restrictions on the imposition of a middle term sentence.  (Compare [§ 1170], subd. (b)(1) with [§ 1170], subd. (b)(2), (6).)  In imposing a middle term sentence, all that section 1170 requires is that the court apply the Judicial Council's sentencing rules and that the

court state the facts and reasons for imposing the middle term on the record at the time of sentencing. (§ 1170, subds. (a)(3), (b)(5), (c); see Cal. Rules of Court, rule 4.401 et seq. [felony sentencing rules].) Because the statute is clear, we need not resort to other aids to interpret it." (*People v. Sarmiento-Zuniga* (2025) 108 Cal.App.5th 1216, 1223–1224.)

Effective January 1, 2022, section 1170, subdivision (b)(6)(B), provides, "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense. [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." Section 1170, subd. (b)(7), provides, "Paragraph (6) does not preclude the court from imposing the lower term even if there is no evidence of those circumstances listed in paragraph (6) present."

The amendment recognizes that certain factors relating to the defendant may have a significant impact on his or her propensity to engage in the criminal conduct. Many cases have acknowledged the profound effect of youth and immaturity on criminal behavior. (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1088, fn. 7, 1091 [youth is necessarily a factor that must be considered as part of the totality of the circumstances].)

33

Similarly, the statutory reference to psychological trauma or a history of abuse may warrant imposition of the low term.  (See § 1016.7, subd. (a)(1)-(3).)

The amendment, therefore, " 'establishes a presumption [that the court should impose] the lower term if the defendant's youth was "a contributing factor" in his or her commission of [a] crime "*unless* the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." ' " (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 986–987; *People v. Flor*es (2022) 73 Cal.App.5th 1032, 1039 (*Flores*)).)

Similarly, under section 1170, subdivision (b)(6)(A), also added by way of the amendment, the presumption favoring the mitigated term applies when a " 'person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence,' and that trauma 'was a contributing factor in the commission of the offense … .' " (*People v. Banner* (2022) 77 Cal.App.5th 226, 240.)  Pursuant to this subparagraph, psychological trauma based on mental illness may be a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6), but psychological trauma must attend the illness, and that trauma must contribute to the crime under section 1170, subdivision (b)(6).  (*Id.*, at p. 241.)

Respecting the assertion that the trial court was unaware of its discretion, we acknowledge that defendants " ""are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation

regarding a material aspect of a defendant's record.'" " (*People v. Salazar* (2023) 15 Cal.5th 416, 424.)  In such circumstances, the Supreme Court has held that the appropriate remedy is to remand for resentencing " ' "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion." ' " (*Ibid.*, citing *People v. Mataele* (2022) 13 Cal.5th 372, 437, among other authorities.)

d.     *Analysis*

The Defendant assumes from the trial court's failure to expressly refer to the amended provisions of section 1170, subdivision (b)(6) that it was unaware of its discretion to impose the low term.  There are problems with this analysis.  First, it ignores the presumption that official duty was discharged (Evid. Code, § 664), which includes the presumption that the court was aware of its discretion before discharging its duty.  As a general rule, and in the absence of evidence to the contrary, a trial court is presumed to know and apply the correct statutory and case law.  (*People v. Bryant*, *Smith and Wheeler* (2014) 60 Cal.4th 335, 398, citing *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

Second, the trial court's repeated statement that it had "chosen" the midterm in light of aggravating factors  indicates it was, in fact, aware of its discretion to impose the low term, as opposed to imposing the midterm simply as a presumptive term, pursuant to section 1170, subdivision (b)(1).  Given the jury's findings of aggravation, followed by the trial court's findings on two aggravating factors, without consideration of mitigating factors, the middle term was not the presumptive term in this case.

Third, the mitigating factors cited by Defendant (minimal criminal background, his personal belief that the acts were consensual which the jury rejected, his belief that molesting Doe was not illegal, and his early acknowledgment of guilt) are not factors that would warrant imposition of a low term sentence within the meaning of section 1170, subdivision (b)(2)(6). That provision authorizes imposition of the low term for persons who have been traumatized by sexual exploitation or are youths or have been a victim of intimate partner violence, to which the factors related to his minimal criminal background and performance on probation or parole were not relevant. The only alleged factor in mitigation that would have triggered section 1170, subdivision (b)(6), is the Defendant's alleged sexual molestation, but there is no indication in the record that the alleged molestation caused emotional or psychological trauma, so it could be properly rejected.

Moreover, the reference to the alleged sexual abuse of Defendant that appears in the probation report of the interview with Defendant is not supported by the record. There was no mention of a background of sexual abuse in his testimony, and Defendant apparently did not even disclose this fact to his trial counsel for inclusion in the sentencing memorandum, nor was the matter broached orally at the sentencing hearing. Defendant's mention of sexual abuse was supported only by his self-serving statement to the probation officer, as memorialized in the probation report. Further, the record is devoid of any reference to psychological trauma experienced by Defendant as a result of the alleged sexual abuse. Thus, absent any support for this postconviction statement, the trial court could have properly found it carried little weight and was insufficient to

36

support the existence of the physical or psychological trauma mitigating factor under any standard of proof.

In any event, even considering Defendant's childhood molestation as a mitigating factor, it does not automatically entitle the Defendant to a mitigated term. Section 1170, subdivision (b)(6) states that "Notwithstanding paragraph (1), and *unless the court finds that the aggravating circumstances outweigh the mitigating circumstances* that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense … ." (Italics added.) Thus, mere invocation of child sexual abuse must be accompanied by evidence of psychological trauma and weighed by the sentencing court against the aggravating factors.

Here, the court properly rejected the factors in mitigation that were argued in the trial court relating to Defendant's belief that the acts were consensual and lawful, which the jury had to have rejected in order to find him guilty, because a defendant's subjective belief that the acts were consensual or lawful where the jury heard, and believed, Doe's testimony to the contrary, is not mitigation; it is denial. If a defendant's self-serving belief that his conduct was not criminal could be considered as mitigation, the concept that ignorance of a law is no excuse for a violation thereof (see *People v. Snyder* (1982) 32 Cal.3d 590, 593) would be turned on its head.

Nor does Defendant's purported voluntary acknowledgment of wrongdoing at an early stage in the criminal process compel a low term where, although he admitted the wrongdoing to April, shortly after April discovered the abuse and confronted him with it,

Defendant denied any wrongdoing or inappropriate touching to law enforcement at the beginning of the investigation, following the report of the crimes. Because this mitigating factor applies where the acknowledgment is at an early stage of the criminal process, rather than an acknowledgment made prior to the initiation of the process (see *Martinez, supra,* 78 Cal.App.5th at p. 324), this factor would also not compel consideration of the low term.

We, like the sentencing court, acknowledge that Defendant's criminal record does not include any felonies, that the list of factors justifying imposition of the low term is not exclusive (see Cal. Rules of Court, rule 4.408(a); *People v. Covino* (1980) 100 Cal.App.3d 660, 671), and that section 1170, subdivision (b)(7) authorizes imposition of the low term "even if there is no evidence of those circumstances that are enumerated in paragraph (6) present." We interpret this provision to mean that other properly supported mitigating factors other than those enumerated in subdivision (b)(6) of section 1170 may be considered. The sentencing rules and subdivision (b)(7) of section 1170 presuppose that the mitigating factors relied upon to invoke the low term provision are valid factors, and that the nature and quality of those factors outweigh any aggravating factors.

In any event, although the court did not expressly mention section 1170, subdivision (b)(6), at the sentencing hearing, we presume the court was aware of the statutory presumption to impose the lower term under certain circumstances. (See *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905 (*Caparrotta*).) In *Caparrotta,* the reviewing court rejected the same argument as that posed here because nothing in the record established that the trial court was unaware of its obligations under section 1170,

38

subdivision (b)(6) or that it failed to apply that provision. "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) Thus, although the trial court did not specifically mention section 1170, subdivision (b)(6), it is presumed to have known of the provision, and is also presumed to be aware of the matters proffered in the sentencing memoranda and the probation report. In any event, because there were aggravating factors and because the mitigating factors relied upon do not outweigh them, qualitatively or quantitatively, the middle term was presumptively correct, and no statement of reasons was required.

Additionally, even if we assume the court was unaware of the amendment due to the lack of a specific reference to it at the sentencing hearing, there is no possibility that a lesser sentence would have been imposed. The sentencing court *did* consider the probation report as well as the mitigating factors relied upon by Defendant at the hearing and concluded the middle term was appropriate because of the aggravating factors. Without evidence or reference to psychological trauma caused by childhood abuse, the court was not required to adhere to a presumptive mitigated term. Any failure to consider the additional factors cited on appeal—pertaining to the factors that Defendant believed the acts were consensual and lawful—would not change the outcome.

Because the mitigating factors did not warrant a presumption favoring imposition of the low term and because the mitigating factors relied upon at the sentencing hearing were outweighed the aggravating factors found true based on the evidence adduced at trial, even if the trial court were unaware of the provisions of the statutory amendment

requiring presumptive imposition of the low term for persons traumatized by childhood sexual abuse, there is no possibility a lower term would be imposed here.

6. *The Abstract Must be Corrected*

Defendant argues that the abstracts of judgment (including the abstract of the determinate sentence and the indeterminate sentence) incorrectly states that Defendant was convicted by the court. The People agree that the abstracts should be amended.

The abstract of judgment constitutes the commitment and is the order sending the defendant to prison, and the process and authority for carrying the judgment and sentence into effect; no other warrant or authority is necessary to justify or require its execution. (§ 1213; *People v. Mitchell* (2001) 26 Cal.4th 181, 185, citing *In re Black* (1967) 66 Cal.2d 881, 890.) It goes without saying that accuracy is essential in a document that prescribes the execution of sentence and is provided to Criminal Investigation and Identification. (§ 1213, subd. (a).) This court has the authority to correct clerical errors at any time. (*Mitchell*, *supra*, at pp. 186–187.)

Pursuant to the request of the parties, the clerk is directed to amend both abstracts of judgment so that they correctly reflect that Defendant was convicted by jury.

**DISPOSITION**

The judgment and sentence are affirmed.  The clerk of the superior court is directed to correct the abstract of judgment to reflect that Defendant was convicted by jury.  The clerk shall forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ          
                       P. J.


We concur:

MILLER           
              J.
CODRINGTON     
              J.